## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MONIKA GLENNON, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 5:16-cv-00804-MHH |
| | } | |
| MOLLIE ROSENBLUM, et al., | } | |
| | } | |
| Defendants. | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Monika Glennon brings this action for copyright infringement under 17 U.S.C. § 501. (Doc. 1). Ms. Glennon also brings claims for libel, invasion of privacy, outrage, and tortious interference with business relations under Alabama law. (Doc. 1). Defendant Mollie Rosenblum has not appeared or otherwise defended this case. On June 20, 2017, the Clerk made an entry of default against Ms. Rosenblum. (Doc. 27). Ms. Glennon since has filed a motion for summary judgment against Ms. Rosenblum. (Doc. 32).

On April 23, 2018, the Court notified Ms. Glennon that, in light of the Clerk's entry of default against Ms. Rosenblum, the Court was inclined to construe her motion for summary judgment as a motion for default judgment. (Doc. 37). Because Ms. Glennon has not objected to this approach, the Court construes her motion as one for default judgment. For the reasons stated below, the Court grants

Ms. Glennon's motion and enters judgment in her favor on her claims against Ms. Rosenblum.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, as in this case, the clerk of court is authorized to enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, if the defendant is not an infant or an incompetent person, a court may enter a default judgment against the defendant because of the defendant's failure to appear or defend.  Fed. R. Civ. P. 55(b)(2).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

"A motion for default judgment is not granted as a matter of right."  *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted).  After a clerk enters a default pursuant to Rule 55(a), a court must review the sufficiency of the complaint and its underlying substantive merits to determine whether a moving party is entitled to default judgment.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).  A court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the

relief sought. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). In addition to the pleadings, a court may consider evidence presented in the form of an affidavit or declaration. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).

## II. FACTUAL BACKGROUND

Although Ms. Rosenblum has not appeared in this action, she has submitted an affidavit to Ms. Glennon's counsel in which she recounts her role in the facts underlying this case. (Doc. 33-2). The Court relies on Ms. Rosenblum's affidavit, Ms. Glennon's affidavit, and the allegations in Ms. Glennon's second amended complaint to establish the facts examined in this opinion.

Monika Glennon is a real estate agent with RE/MAX Alliance in Huntsville, Alabama. (Doc. 18, ¶ 10). In 2013, Ms. Glennon hired a photographer to take a professional portrait of her which Ms. Glennon since has used to promote her business in paper and digital media. (Doc. 18, ¶ 11; Doc. 18-2, p. 2). The photographer later transferred ownership of the image to Ms. Glennon, and Ms. Glennon copyrighted the image. (Doc. 18, ¶ 12; Doc. 18-2, p. 2).

On September 16, 2015, Ms. Rosenblum anonymously posted a story purportedly about Ms. Glennon to a website called "She's a Homewrecker." (Doc. 18, ¶ 14; Doc. 33-2, ¶ 4). The website markets itself as a forum in which aggrieved wives can publically shame women who allegedly have committed adultery with their husbands. (Doc. 18, ¶ 13; Doc. 18-3, pp. 2–3.) Ms. Rosenblum narrated her tale of salacious events from the perspective of such a wife and included Ms. Glennon's full name and her professional portrait in the posting. (Doc. 18, ¶ 14; Doc. 18-3, p. 2; Doc. 33-2, ¶ 8).

Ms. Rosenblum asserted that she and her husband hired Ms. Glennon to help with their search for a new home in the Huntsville area. (Doc. 18-2, p. 2; Doc. 33-2, ¶ 5). According to Ms. Rosenblum, when she arrived at a potential property, she found her husband inside the house engaging in sexual acts with Ms. Glennon. (Doc. 18-3, pp. 2–3; Doc. 33-2, ¶5). In the story that she posted, Ms. Rosenblum graphically recounted the details of the alleged adulterous encounter, referring to Ms. Glennon as "a nasty slut," and "a disgusting skank of a woman." (Doc. 18-3, p. 3; Doc. 33-2, ¶ 6). Ms. Rosenblum concluded the post by telling readers: "DO NOT USE THIS WOMAN AS A REALTOR." (Doc. 18-3, p. 3).

As both the complaint and the parties' affidavits indicate, the story was false. (Doc. 18, ¶ 18; Doc. 33-2, ¶¶ 13, 17, 18). In fact, when she posted the story, Ms. Rosenblum had not met Ms. Glennon. (Doc. 33-1, ¶ 5; Doc. 33-2, ¶ 13).

Neither Ms. Rosenblum nor her husband, who was deceased at the time of the alleged encounter, ever hired Ms. Glennon as a realtor. (Doc. 33-1, ¶ 5; Doc. 33-2, ¶ 13). Although Ms. Rosenblum's motives for targeting Ms. Glennon are not clear, she alludes to having read online posts by Ms. Glennon which led Ms. Rosenblum to believe, incorrectly, that Ms. Glennon was anti-Semitic. (Doc. 33-2, ¶¶ 18, 19, 21).

The false story about Ms. Glennon became one of the most popular pieces on "She's a Homewrecker," and it attracted a substantial amount of commentary from readers of the site who referred to Ms. Glennon as a "tramp," among other things. (Doc. 18, ¶ 16; Doc. 18-3, pp. 3–6; Doc. 33-2, ¶ 9). Readers then shared the story in other online forums including Facebook and the website "BadBiz Report." (Doc. 33-2, ¶ 9). The story reached the height of its popularity when it was picked up by the news outlet AL.com and by a local television station. (Doc. 33-1, ¶ 7; Doc. 33-2, ¶¶ 11, 12). Ms. Rosenblum's story also was reposted on RE/MAX's website. (Doc. 33-1, ¶ 11; Doc. 33-2,¶ 10).

Sometime after posting the story, Ms. Rosenblum relented and contacted various websites where the story was posted in an unsuccessful attempt to have it removed. (Doc. 33-2, ¶¶ 19–21). The websites that continue to make the story available have informed both Ms. Glennon and Ms. Rosenblum that they will not

de-index the story without a court order declaring the story to be false. (Doc. 33-1,

¶ 14; Doc. 33-2, ¶ 20).

## III. DISCUSSION

### a. Subject Matter Jurisdiction

Before the Court enters a default judgment, the Court first must ensure that it

has subject matter jurisdiction over the case. *Smarter Every Day, LLC v. Nunez*,

2017 WL 1247500, at *2 (N.D. Ala. Apr. 5, 2017) (citing *Sys. Pipe & Supply, Inc.

v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)). In her second

amended complaint, Ms. Glennon asserts that the Court may exercise jurisdiction

over her federal copyright claim pursuant to 28 U.S.C. § 1331 and exercise

supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

(Doc. 18, ¶ 8).

When a plaintiff's well-pleaded complaint alleges a cause of action arising

under federal law, the federal courts have subject matter jurisdiction to adjudicate

the federal claim. *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir.

2013) (citing *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997)). In

Count One of her second amended complaint, Ms. Glennon asserts a claim for

copyright infringement under 17 U.S.C. § 501. (Doc. 18, p. 5). "Copyright

infringement has two elements: '(1) ownership of a valid copyright, and (2)

copying of [protectable] elements.'" *Home Design Servs. Inc. v. Turner Heritage*

*Homes, Inc.*, 825 F.3d 1314, 1320 (11th Cir. 2016) (quoting *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012)). In support of her copyright claim, Ms. Glennon alleges that Ms. Rosenblum "copied and distributed" a copyrighted image without permission and that Ms. Glennon owns the rights to that image. (Doc. 18, p. 5). The Court examines the substance of Ms. Glennon's copyright claim below, but for jurisdictional purposes, the Court is satisfied that Ms. Glennon has sufficiently alleged a claim arising under federal law. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 89 (1998).

The Court may exercise supplemental jurisdiction over Ms. Glennon's state law tort claims if those claims are so related to the federal claim that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims form a part of the same case or controversy when they arise from "a common nucleus of operative fact." *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724–25 (1966)). Ms. Glennon alleges that Ms. Rosenblum violated federal copyright law when she published the registered image of Ms. Glennon on a public website as part of the defamatory story. (Doc. 18, ¶¶ 14, 20). Ms. Rosenblum's publication of the false story to which the image was attached is the basic factual nucleus underlying each of Ms. Glennon's state law tort claims. (Doc. 18, ¶¶ 14–18). Consequently, the

7

state law claims are sufficiently related to the federal law claim for the Court to exercise supplemental jurisdiction over them.

## b. Personal Jurisdiction

To enter a valid default judgment, the Court also must determine that it has personal jurisdiction over the defendant. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Under Rule 4 of the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Ms. Glennon alleges, and Ms. Rosenblum's affidavit confirms, that Ms. Rosenblum is a resident of Limestone County, Alabama. (Doc. 18, ¶ 3; Doc. 33-2, ¶ 3). The record also indicates that Ms. Glennon served Ms. Rosenblum with process on April 18, 2017. (Doc. 4, p. 2). Therefore, the Court is satisfied that it has personal jurisdiction over Ms. Rosenblum.

## c. Copyright Violation

An image like the professional portrait at issue here can be copyrighted under federal law. *See* 17 U.S.C. § 102(a)(5). A plaintiff establishes her prima facie case of copyright infringement by showing "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (quoting

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)).  To prove ownership under the first prong of the *Feist* test, a plaintiff must show that she "complied with applicable statutory formalities'" governing copyright law. *Latimer*, 601 F.3d at 1233.  Section 411(a) of the Copyright Act states that before a plaintiff may file an infringement action, the copyright in question must have been registered or preregistered in accordance with the Act.  17 U.S.C. § 411(a).  A "certificate of registration made before or within five years after first publication of the work" is prima facie evidence of ownership of a valid copyright.  *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).  When a plaintiff "produces a certificate of registration, the burden shifts to the defendant to establish that 'the work in which copyright is claimed is unprotectable (for lack of originality).'" *Latimer*, 601 F.3d at 1233 (quoting *Bateman*, 79 F.3d at 1541).

Ms. Glennon alleges that she obtained the rights to the photographic image at issue from the photographer, who took the photo in 2013.  (Doc. 18, ¶ 12).  She offers a certificate of registration for the copyrighted image dated April 27, 2016.  (Doc. 18-2).  By alleging that she owns the rights to the image and by offering evidence that the copyright was registered in her name within five years of the image's creation, Ms. Glennon has made a prima facie showing of ownership.

There is one further issue that bears discussing under the first prong of the *Feist* test.  Section 501(b) of the Copyright Act authorizes "[t]he legal or beneficial

9

owner of an exclusive right under a copyright" to bring suit "for any infringement of that particular right committed *while he or she is the owner of it*." 17 U.S.C. § 501(b) (emphasis added). The statute's restrictive language has given rise to the rule that an assignee of a copyright generally does not have standing to bring an infringement claim that accrued prior to the assignment.[1] *See Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 699 (5th Cir. 1969);[2] *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). Both Ms. Glennon's motion and her second amended complaint indicate that the alleged infringement occurred before Ms. Glennon acquired ownership of the copyright. (Doc. 18, ¶ 12; Doc. 34, p. 7). But ultimately the timing issue is not fatal to Ms. Glennon's claim.

Although mere assignment of a copyright does not confer standing on the assignee to sue for past infringement, an assignor may assign an accrued cause of action for infringement along with the copyright, so long as the assignor does so expressly. *See Prather*, 410 F.2d at 699;[3] *see also Wiley & Sons v. DRK Photo*,

---

[1] At issue here is the concept of statutory standing which concerns the limitations that Congress places on a party's ability to bring a case rather than the Constitution's limitation on the Court's power to hear the case under the case or controversy requirement of Article III. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n. 4 (2014). As such, this discussion has no bearing on the Court's subject matter jurisdiction to adjudicate Ms. Glennon's claims.

[2] *See Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent in the Eleventh Circuit Court of Appeals decisions that the Fifth Circuit Court of Appeals rendered before October 1, 1981).

[3] Although *Prather* addressed the 1909 Act, the predecessor of the Copyright Act of 1976, the Fifth Circuit recently cited *Prather* for its treatment of the issue of an assignee's standing to sue

882 F.3d 394, 403–04 (2d Cir. 2018); *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 890 n. 1 (9th Cir. 2005) (en banc). Ms. Glennon asserts that the original photographer transferred both exclusive ownership rights to the image and the right to sue for past infringement to Ms. Glennon. (Doc. 18, ¶¶ 12, 23; Doc. 34, p. 7). Therefore Ms. Glennon has standing to bring this claim and has satisfied the first prong of the *Feist* test.

A plaintiff satisfies the second prong of the *Feist* test by establishing that the alleged infringer actually copied the plaintiff's copyrighted work and by responding to any showing that the work copied does not satisfy the constitutional requirement of originality. *Latimer*, 601 F.3d at 1233 (citing U.S. CONST. art. I, § 8, cl. 8). Ms. Glennon alleges that Ms. Rosenblum copied and publicized the protected image without authorization. (Doc. 18, ¶¶ 14, 22). As evidence of this unauthorized publication, Ms. Glennon offers a copy of the webpage displaying Ms. Rosenblum's story including the protected image of Ms. Glennon. (Doc. 18-3, p. 2). Ms. Rosenblum admits that she copied and posted the image without authorization, and she does not contend that the image lacks the requisite originality to qualify for copyright protection. (Doc. 33-2, p. 3). Therefore, Ms.

---

for past copyright infringement, indicating that the opinion has continuing vitality despite the intervening adoption of the Copyright Act of 1976. *See Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 232–33 (5th Cir. 2018).

Glennon has satisfied the second prong of the *Feist* test, and the Court enters judgment in her favor on her claim for copyright infringement.

### d. Libel

Libel is a form of defamation accomplished through a permanent medium such as writing. *See Libel*, BLACK'S LAW DICTIONARY (8th ed. 2004).

> To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod). (citations omitted).

*Nelson v Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988). Ms. Glennon's pleadings in conjunction with Ms. Rosenblum's affidavit satisfy each of these elements.

Ms. Rosenblum knew that her story about Ms. Glennon was a fabrication. (Doc. 33-2, ¶ 4). She posted the story to a publically available website. (Doc. 33-2, ¶ 4). The facts in the story concerned Ms. Glennon and were demonstrably false. (Doc. 33-2, ¶ 13). As Ms. Glennon argues, the type of libel that Ms. Rosenblum committed is actionable *per se*. (Doc. 34, p. 10). "'In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se.'" *Gary v. Crouch*, 867 So. 2d 310, 316 (Ala. 2003) (citing *Marion v. Davis*, 114 So. 357, 359 (Ala. 1927)). Ms.

Glennon alleges, and the Court agrees, that she was subjected to public ridicule and contempt because of Ms. Rosenblum's story. (Doc. 18, ¶¶ 16, 18). The comments that readers made in response to the story give an indication of the public humiliation that Ms. Rosenblum caused Ms. Glennon to suffer. (Doc. 18-3, pp. 4–6).

Ms. Glennon has adequately stated a claim for libel *per se*, and she has supported this claim with evidence. Therefore, the Court enters default judgment in Ms. Glennon's favor on her libel claim.

### e. Invasion of Privacy (False Light)

Ms. Glennon's third claim against Ms. Rosenblum is for invasion of privacy. Conduct that places "the plaintiff in a false, but not necessarily defamatory, position in the public eye" may be actionable under Alabama law as a tortious invasion of the plaintiff's privacy. *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997). To state a claim, the plaintiff first must show that defendant published information concerning the plaintiff that was false. *See Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003). Second, the plaintiff must show that the false light in which the defendant placed her "would be highly offensive to the reasonable person" and that the defendant knew or "acted in reckless disregard as to the falsity of the publicized matter." *Schifano v. Greene Cty. Greyhound Park, Inc.*, 624 So.

2d 178, 180 (Ala. 1993)(emphasis omitted)(quoting RESTATEMENT (SECOND) OF TORTS § 652E (AM. LAW INST. 1977)).

As noted above, the purported facts in Ms. Rosenblum's story were false, and she made them publically available online. The record also indicates that other online news media outlets and a local TV station acquired and republished the information in Ms. Rosenblum's story. (Doc. 18, ¶ 16; Doc. 33-2, ¶¶ 9, 11, 12). There is little doubt that the reasonable person would find it highly offensive to be portrayed as adulterous and unprofessional, the manner in which Ms. Rosenblum's story portrayed Ms. Glennon. Therefore, Ms. Glennon is entitled to default judgment on her invasion of privacy claim.[4]

### f. The Tort of Outrage

Ms. Glennon argues that by publishing a knowingly false story solely to cause harm to a stranger, Ms. Rosenblum committed the tort of outrage.[5] To establish a claim for outrage, a plaintiff must show that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure

---

[4] Because of the posture of this case, and the limited record, the Court finds that Ms. Glennon is entitled to judgment on both her claim for false light and her claim for defamation. The Court is not suggesting that facts giving rise to one claim inevitably give rise to the other. It is possible that similar allegations, when fully vetted by the adversarial process of litigation, would warrant a different outcome.

[5] In her second amended complaint, Ms. Glennon labels this as a claim for intentional infliction of emotional distress. Under Alabama law, intentional infliction of emotional distress is also known as the tort of outrage. *Ex Parte Bole*, 103 So. 3d 40, 52 (Ala. 2012).

it." *Wilson v. Univ. of Ala. Health Servs. Foundation, P.C.*, --- So. 3d ---, 2017 WL 6397654, at *2 (Ala. Dec. 15, 2017) (citing *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)). To recover for outrage, the plaintiff must show that the defendant's conduct was "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized society." *Green Tree*, 565 So. 2d at 44. Although this high standard has led the Alabama Supreme to recognize the tort of outrage only in a limited set of circumstances, the scope of the tort is not limited to those previously recognized situations. *Wilson*, 2017 WL 6397654, at *3 (citing *Little v. Robinson*, 72 So. 3d 1168, 1172–73 (Ala. 2011)).

Given the extreme facts stated in Ms. Glennon's complaint and the fact that Ms. Rosenblum substantiates these allegations in her affidavit, Ms. Glennon's claim clears the high threshold for outrage. Ms. Rosenblum admits that she "posted the story on public websites maliciously and with the intent to cause harm to Mrs. Glennon." (Doc. 33-2, ¶ 5). To cause the intended harm, Ms. Rosenblum crafted a story with explicit details that portrayed Ms. Glennon as a shameful, untrustworthy person. (Doc. 33-2, ¶¶ 5, 6, 17). Ms. Rosenblum published this story in a public forum and responded to her own story with comments aimed at causing further damage to Ms. Glennon. (Doc. 33-1, ¶ 7; Doc. 33-2, ¶ 4). Ms. Glennon testifies that she suffered severe emotional distress and anxiety as she

attempted to defend her reputation as a wife, a mother, and a professional against the attacks of strangers who had read the story online. (Doc. 33-1, ¶¶ 9–10, 12–13).

Public internet forums abound. It is intolerable in a civilized society for an individual to use these platforms to broadcast scandalous lies about a complete stranger. As this case illustrates, the internet amplifies the reach of such corrosive falsehoods while obscuring their source and support or the lack thereof. Not every case of internet cruelty will surmount the high bar for outrage. But here, Ms. Rosenblum went through the trouble of couching her lies in an elaborate story, giving them an air of plausibility by setting them in the real estate context in which Ms. Glennon actually works. Ms. Rosenblum concedes that she published these lascivious falsehoods solely to inflict emotional and professional harm upon a woman she had never met. Ms. Rosenblum also chose a website that was public and evidently did not verify the content it offers so that the story would be broadly read. Under these circumstances, the Court finds that the elements of outrage have been satisfied. Therefore, Ms. Glennon is entitled to judgment on her claim for outrage.

### g. Tortious Interference with Business Relationships

Ms. Glennon's fifth cause of action against Ms. Rosenblum is for tortious interference with business relations. (Doc. 18, p. 8). Ms. Glennon alleges that

"much of her business depends on potential clients finding her through internet searches."  (Doc. 18, ¶ 18).  And as a result of the story's popularity, the fictitious account her adulterous behavior is now among the top results produced by a search for Ms. Glennon's name.  (Doc. 18, ¶ 17).  Ms. Glennon also points out that, in addition to relating the details of the fictitious encounter, Ms. Rosenblum admonished readers of the story "DO NOT USE THIS WOMAN AS A REALTOR."  (Doc. 18-3, p. 3 emphasis original).  Ms. Rosenblum concedes that she harmed Ms. Glennon professionally.  (Doc. 33-2, ¶ 15).

To establish a prima facie case for tortious interference, Ms. Glennon must demonstrate "(1) the existence of a protectible [sic] business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage."  *White Sands Grp, L.L.C. v. PRS II, L.L.C.*, 32 So. 3d 5, 14 (Ala. 2009).

In her second amended complaint, Ms. Glennon alleges that she "lost a significant amount of business during the months following the post directly related to her tarnished reputation."  (Doc. 18, ¶ 18).  She elaborates on the nature of these lost relationships in her motion when she argues that she "had a business relationship (or at least potential relationship) with the public as a real estate agent working for RE/MAX."  (Doc. 34, p. 20).  This theory and the underlying allegation are not adequate to show that Ms. Glennon is entitled to relief because

she does not identify the existence a business relationship worthy of the law's protection. Although a business relationship need not be formalized in a contract to warrant protection, *see White Sands*, 32 So. 2d at 15, a business person does not have a legally protectable relationship with every potential participant in their local market. Ms. Glennon may have lost certain opportunities because of Ms. Rosenblum's story, but without more in the way of factual detail, the Court cannot assess whether legally protectable relationships existed between Ms. Glennon and these potential clients. Thus, Ms. Glennon's general reference to the local real estate market does not establish the requisite business relationship without additional evidence indicating that Ms. Glennon had a connection with particular persons or opportunities that Ms. Rosenblum damaged.

Ms. Glennon's testimony as to her existing clients is another matter. In her affidavit, Ms. Glennon testifies that she "lost clients who were working with [her] at the time that the post was publicized on the internet, who later decided, as a result of Rosenblum's false and defamatory story, that they no longer wished to work with [her]." (Doc. 33-1, ¶ 11). Here, Ms. Glennon's testimony indicates that the story cost her existing relationships with specific people or particular deals. Ms. Glennon testifies that she was already "working with" these people, suggesting that sufficiently definite business relationships had developed regardless of whether those relationships involved a binding commitment from either party. *Cf.*

*Teitel v. Wal-Mart Stores, Inc.*, 287 F. Supp. 2d 1268, 1280 (M.D. Ala. 2003). [6] As for the requirement that the defendant know of the business relationships in question, it is enough that Ms. Rosenblum knew that "'*some* party or parties had a prospective contractual relationship'" with Ms. Glennon; Ms. Rosenblum did not need to know the identity of those parties. *Teitel*, 287 F. Supp. 2d at 1281 (quoting *Verkin v. Melroy*, 699 F.2d 729, 733 (5th Cir. 1983) (emphasis in original)),

A defendant is considered a stranger to the injured business relationship if the defendant is not a party in interest to the relationship. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1302 (11th Cir. 2010) (citing *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003)). The record does not indicate that Ms. Rosenblum had an interest in the relationships that Ms. Glennon had as a realtor with her clients. Finally, Ms. Rosenblum admits that by publishing the defamatory story, she "intentionally interfered with [Ms. Glennon's] career, her livelihood, and her business by creating a story relating to her as a professional and urg[ing] the public not to hire her as a real estate agent." (Doc. 33-2, ¶ 15).

Although Ms. Glennon does not provide information that would allow the Court to assess the amount of damage she has suffered, it is enough for purposes of

---

[6] In *Teitel*, the plaintiffs had been in negotiations with a prospective buyer for property belonging to the plaintiffs which was slated for sale at a foreclosure auction. The potential buyer failed to bid on the property after Wal-mart interfered with an easement necessary for the development of the plaintiffs' property. Although the business relationship had not been formalized in a contract and neither party was otherwise obligated to the other, the Court rejected Wal-Mart's argument that the alleged relationship was too tenuous and speculative to be within the law's protection. *Teitel*, 287 F. Supp. 2d at 1281.

this motion that Ms. Glennon testified that she lost business relationships at least in part because of Ms. Rosenblum's story. *See Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1353 (Ala. 1991) (holding that a plaintiff is not required to prove but-for causation of damages to sustain a claim for tortious interference). Therefore the Court enters judgment in Ms. Glennon's favor on her claim for tortious interference with business relations.

### h. Damages

When assessing damages, a court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). An evidentiary hearing may be required to determine the amount of damages; however, if the record is sufficient, a court may be able to determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Thus, although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

In her second amended complaint, Ms. Glennon requests several forms of monetary recovery: actual damages for the copyright infringement, compensatory and punitive damages, and the costs of filing and sustaining this action. (Doc. 18, pp. 10–11). Ms. Glennon does not request a specific amount of damages. Ms.

Glennon also asks the Court for a declaration that Ms. Rosenblum's story is defamatory and injunctive relief ordering the websites and outlets posting the story to deindex the story. (Doc. 18, p. 10).

The Court has already concluded that Ms. Rosenblum's story is defamatory. Therefore, the Court orders those websites still carrying Ms. Rosenblum's story to remove it from their platforms. The Court also orders that search engines, such as Google, de-index the story to ensure that it does not appear as a search result when Ms. Glennon's name is searched. The Court will set a hearing to discuss the issue of damages.

## IV. CONCLUSION

For the reasons stated above, the Court enters judgment in Ms. Glennon's favor on her claim for copyright infringement, her claim for libel, her claim for invasion of privacy, her claim for intentional infliction of emotional distress, and her claim for tortious interference with business relations. In light of the defamatory nature of Ms. Rosenblum's story, the Court grants Ms. Glennon the injunctive relief described above. The Court sets the issue of damages for a telephone conference at 2:00 p.m. on July 11, 2018. Counsel for Ms. Glennon shall dial 877-873-8018 and enter access code 5313999 to participate in the call.

DONE and ORDERED this 3rd day of July, 2018.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE